PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

FARID M. SAYYED,

*Plaintiff-Appellant,*

v.

WOLPOFF & ABRAMSON,

*Defendant-Appellee.*

⎱ No. 06-1458

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(8:05-cv-01104-PJM)

Argued: March 15, 2007

Decided: May 9, 2007

Before WILKINS, Chief Judge, and WILKINSON and
MOTZ, Circuit Judges.

---

Reversed and remanded by published opinion. Judge Wilkinson wrote
the opinion, in which Chief Judge Wilkins and Judge Motz joined.

---

## COUNSEL

**ARGUED:** Ernest Paul Francis, Arlington, Virginia, for Appellant.
Ronald Scott Canter, WOLPOFF & ABRAMSON, Rockville, Mary-
land, for Appellee. **ON BRIEF:** Anne S. Cruz, WOLPOFF &
ABRAMSON, Rockville, Maryland, for Appellee.

**OPINION**

WILKINSON, Circuit Judge:

   This case involves claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (2000). Farid Sayyed sued the law firm Wolpoff & Abramson ("W&A") under the FDCPA for actions taken in W&A's effort to collect a debt from Sayyed by means of a suit in Maryland state court. Defendant W&A moved to dismiss for failure to state a claim, arguing that it enjoyed common law litigation immunity from the FDCPA. The district court agreed and dismissed Sayyed's suit on the ground that absolute immunity protected W&A. Sayyed appealed. Because the FDCPA, not common law, must govern the disposition of this action, we reverse the district court's judgment and remand the case for further consideration.

I.

   W&A is a law firm regularly practicing in the field of consumer debt collection. Discover Bank, the issuer of the Discover Credit Card, retained W&A to pursue an action against Sayyed for defaulted credit card debt. On behalf of Discover Bank, W&A sued Sayyed in Maryland state court to collect the balance due.

   After W&A moved for summary judgment in the state collection suit, Sayyed sued W&A in federal court, alleging that W&A violated the FDCPA in pursuing the state action.[1] Sayyed alleged FDCPA violations arising from W&A's interrogatories to Sayyed and its summary judgment motion.

   Sayyed alleged that the interrogatories failed to state that they were a communication from a debt collector, in violation of 15 U.S.C. § 1692e(11). He also alleged that the interrogatories violated § 1692e(10)'s prohibition against false representations and § 1692f's prohibition against unfair or unconscionable collection attempts by making three false statements: (1) that the trial date for the Maryland

---

[1]As to the outcome of the state collection suit, W&A states that, after Sayyed filed a counterclaim in state court, Discover Bank obtained new counsel, from whom W&A has learned that the case ultimately settled.

case was June 11, 2004; (2) that Sayyed had to state his grounds of refusal to answer the interrogatories under oath; and (3) that the state court could enter a default judgment against Sayyed if he did not mail answers to W&A within thirty days after the date of service.

Sayyed alleged that W&A's motion for summary judgment contravened the FDCPA in that its false statement of the amount of Sayyed's debt violated § 1692e(2)(A), and its statement that Sayyed was liable for attorney's fees of fifteen percent of the principal balance violated § 1692e(2)(B) as a false representation and § 1692f(1) as the collection of an amount not permitted by law or expressly authorized by the agreement creating the debt.

W&A filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). W&A argued, first, that attorneys enjoy absolute common law immunity from claims based on statements made in the course of judicial proceedings. W&A also contended that, even if it was not entitled to immunity, the interrogatories and summary judgment motion were served upon Sayyed's counsel rather than Sayyed, and thus could not give rise to violations of the FDCPA. Finally, W&A argued that Sayyed's claims relating to the summary judgment motion should be dismissed because the allegedly false statements were based upon information furnished to W&A by its client, Discover Bank, and W&A as counsel had the right to rely upon that information.

The District Court orally granted W&A's motion to dismiss. It concluded that W&A enjoyed absolute immunity from the FDCPA for its interrogatories and summary judgment motion. The district court spoke at times in terms of "witness immunity," although W&A's interrogatories involved no witnesses. But the court also spoke more broadly in terms of litigation immunity, "a common law immunity from claims based on statements made in the course of judicial proceedings." J.A. at 78. It finally held that "absolute immunity obtains with regard to these statements." *Id.* at 82. The court alternatively dismissed Sayyed's claims relating to the summary judgment motion because of W&A's reliance on the statements of its client, Discover Bank. Finally, the court determined that attorney's fees equal to fifteen percent of the debt represented a per se reasonable fee.

Sayyed appeals. We review a dismissal for failure to state a claim *de novo*. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

## II.

W&A argues that it cannot be subject to claims under the FDCPA because an absolute common law immunity attaches to "any statements made during the course of judicial proceedings." In W&A's view, the allegedly false statements in W&A's interrogatories and summary judgment motion thus cannot constitute FDCPA violations.

We cannot accept this conclusion. The FDCPA clearly defines the parties and activities it regulates. The Act applies to law firms that constitute debt collectors, even where their debt-collecting activity is litigation. W&A asks that we disregard the statutory text in order to imply some sort of common law litigation immunity. We decline to do so. Rather, "where, as here, the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (internal quotation marks omitted).

## A.

The statutory text makes clear that there is no blanket common law litigation immunity from the requirements of the FDCPA. First and foremost, the plain meaning of the Act's definition of "debt collector" encompasses attorneys. Section 1692a(6) of the FDCPA provides:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

The provision goes on to state six specific exceptions to this definition, none of which cover attorneys, much less attorneys specifically engaged in litigation. The exceptions cover (1) any officer or

employee of a creditor collecting debts in the name of the creditor; (2) any person whose principal business is not collecting debts but who is collecting debts for another person, both of whom are related by common ownership or affiliated by corporate control; (3) any officer or employee of the United States or any state performing official duties; (4) any person attempting to serve legal process in connection with the judicial enforcement of a debt; (5) any nonprofit organization performing bona fide consumer credit counseling at the request of consumers; and (6) any person whose activity is "incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; concerns a debt which was originated by such person; concerns a debt which was not in default at the time it was obtained by such person; or concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor." *See* 15 U.S.C. § 1692a(6). If Congress had wished to exempt the litigating activities of attorneys from the definition of "debt collector," it could easily have drafted a seventh exception to this effect.

W&A does not dispute that it is a law firm regularly practicing in the field of consumer debt collection, and that it fails to fit into any of the statutorily provided exceptions. Therefore, according to the plain text of the statute, W&A is a debt collector subject to the FDCPA's provisions.

The Supreme Court has expressly confirmed this reading of the FDCPA. *Heintz v. Jenkins*, 514 U.S. 291, 293 (1995), involved a collection suit brought by a bank's law firm against Darlene Jenkins to recover on an automobile loan. George Heintz, a lawyer with the bank's firm, sent Jenkins's lawyer a letter in an attempt to settle the suit. *Id.* The letter gave what Jenkins claimed was a false statement of the amount she owed the bank. *Id.* She sued Heintz and his firm under the FDCPA, and the district court dismissed her suit for failure to state a claim, on the ground that the FDCPA did not apply to litigating lawyers. *Id.* at 294.

The Seventh Circuit reversed, 25 F.3d 536, 540 (7th Cir. 1994), and the Supreme Court upheld its view that "[t]he Act does apply to lawyers engaged in litigation." 514 U.S. at 294. The Court grounded this conclusion in the FDCPA's definition of "debt collector" at § 1692a(6). The Court recognized that Heintz and his firm fell under

the § 1692a(6) definition: "In ordinary English, a lawyer who regularly tries to obtain payment of consumer debts through legal proceedings is a lawyer who regularly 'attempts' to 'collect' those consumer debts." *Id.*

The Court further recognized that an earlier version of § 1692(a)(6) had provided an express exception for lawyers, which stated that the term "debt collector" did not include "any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client." *Id.* (citing Pub. L. 95-109, § 803(6)(F), 91 Stat. 874, 875 (1977)). In 1986, however, Congress repealed the attorney exemption. *Id.* (citing Pub. L. No. 99-361, 100 Stat. 768 (1986) ("[A]ny attorney who collects debts on behalf of a client shall be subject to the provisions of [the Act].")). The Court recognized the significance of Congress having repealed the attorney exemption "in its entirety, without creating a narrower, litigation-related exemption to fill the void." *Id.* at 294-95. The Court declined to imply such a litigation-related exception, holding that such an exception "falls outside the range of reasonable interpretations of the Act's express language." *Id.* at 298. Thus the Court confirmed that there is no implied exemption to the statute's definition of debt collector: as is clear from its face, the FDCPA "applies to the litigating activities of lawyers." *Id.* at 294.

After *Heintz*, Congress passed an amendment to the statute that provides further confirmation that the FDCPA applies to conduct like that at issue here. It amended § 1692e(11), which prohibits communications that fail to disclose that they are from a debt collector, to state that the provision "shall not apply to a formal pleading made in connection with a legal action." 15 U.S.C. § 1692e(11), as amended Pub. L. 104-208, § 2305(A), 110 Stat. 3009, 3009-425 (1996). This provision expressly exempts formal pleadings from a sole, particularized requirement of the FDCPA: the requirement that all communications state that they come from a debt collector.

If W&A were correct that conduct in the course of litigation, or even formal pleadings more specifically, were entirely exempt from the FDCPA, § 1692e(11)'s express exemption of formal pleadings would be unnecessary. "[C]ourts should disfavor interpretations of statutes that render language superfluous." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992). The amendment by its terms in fact

suggests that *all* litigation activities, *including* formal pleadings, are subject to the FDCPA, *except* to the limited extent that Congress exempted formal pleadings from the particular requirements of § 1692e(11). Furthermore, because Congress is presumed to act with awareness of a judicial interpretation of a statute, the fact that the amendment occurred after *Heintz* further indicates that Congress was aware of the Court's interpretation of the FDCPA and accepted it, except for the narrow exemption it provided for formal pleadings from the requirements of § 1692e(11). *See, e.g.*, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 381-82 (1982) (Congress presumed to be aware of prior judicial interpretation in amending statute). Thus, under multiple precepts of statutory interpretation, Congress' amendment of § 1692e(11) provides clear evidence that litigation activity is subject to the FDCPA, except to the limited extent that Congress exempted formal pleadings from the requirements of that particular subsection.

Our view that common law immunities cannot trump the Act's clear application to the litigating activities of attorneys is fortified by its bona fide error defense provision. Section 1692k(c) provides:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c). This provision offers a kind of qualified immunity to debt collectors, protecting actions which otherwise are covered by the statute but arose from bona fide error and were not intentional violations. Such a provision supplies an additional argument against implying immunities as to which the statute is silent: Congress addressed the issue of immunity expressly and extended it only as far as § 1692k(c) provides. To insist that some unarticulated, common law immunity survived the creation of the FDCPA would be to fail to give effect to the scope of the immunity articulated in the text.

What we hold is nothing new. Even before the Supreme Court decided *Heintz*, we stated that, under the plain meaning of the

FDCPA, a litigating attorney fell under the statute's definition of "debt collector." *See Scott v. Jones*, 964 F.2d 314, 318 (4th Cir. 1992). We rejected the contention that attorney Jones was "engaged in the practice of law, not the collection of debts" as an "artificial distinction:" "No matter what name is applied to Jones' activities, it is clear that the 'principal purpose' of his work was the collection of debt." *Id.* at 316. After *Heintz*, this court has recognized that "it is well-established that lawyers can be 'debt collectors' *even if conducting litigation*." *Wilson v. Draper & Goldberg*, 443 F.3d 373, 378 (4th Cir. 2006) (citing *Heintz*, 514 U.S. at 299) (emphasis added); *see also Carroll v. Wolpoff & Abramson*, 961 F.2d 459, 461 (4th Cir. 1992) (applying FDCPA to law firm's post-litigation follow-up letter to debtor).

All circuits to consider the issue, except for the Eleventh, have recognized the general principle that the FDCPA applies to the litigation activities of attorneys who qualify as debt collectors under the statutory definition. *See, e.g.*, *Goldman v. Cohen*, 445 F.3d 152, 155 (2nd Cir. 2006); *Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d 432, 446 (6th Cir. 2006); *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 232 (3d Cir. 2005); *Thomas v. Law Firm of Simpson & Cybak*, 392 F.3d 914, 917 (7th Cir. 2004) (en banc); *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002); *Addison v. Braud*, 105 F.3d 223, 224 n.1 (5th Cir. 1997); *but see Vega v. McKay*, 351 F.3d 1334, 1337 (11th Cir. 2003) (relying on superseded FTC commentary to hold complaint did not constitute initial communication under FDCPA).

## B.

Despite all this, W&A makes a number of specific arguments that the district court was correct to dismiss this case on the basis of immunity for the firm's litigating activities. While it should be clear from the statute that these arguments are foreclosed, we shall nevertheless address them briefly.

First, W&A argues that FDCPA liability cannot attach to communications made by a debt collection attorney to a debtor's counsel, rather than to the debtor. But the statute defines "communication" broadly as "the conveying of information regarding a debt directly or

indirectly to any person through any medium." 15 U.S.C. § 1692a(2). A communication to debtor's counsel, regarding a debt collection lawsuit in which counsel is representing the debtor, plainly qualifies as an indirect communication to the debtor. Furthermore, in a section entitled "Communication in connection with debt collection," the statute provides that, if the debt collector knows the debtor is represented by an attorney in connection with the debt, and if the debt collector can readily ascertain the attorney's contact information, the debt collector may not communicate directly with the debtor, unless the debtor's attorney does not respond to a communication in a reasonable amount of time. *See id.* § 1692c(a)(2). This provision is but another indication that communications with a debtor's attorney with regard to the debt are "communications" as defined and regulated by the FDCPA — and that such communications must in fact be directed to the attorney under the terms of the statute.

If the statute left any room for doubt about this issue, *Heintz* resolved it. *Heintz* itself involved a communication from a debt collection attorney to debtor Darlene Jenkins' counsel, not to Jenkins herself. *See* 514 U.S. at 293. The Supreme Court held that Jenkins had a cause of action under the FDCPA on the basis of statements contained within the letter to her counsel. *See id.* at 294. Thus, plainly, the FDCPA covers communications to a debtor's attorney.

Second, W&A argues by analogy to case law under 42 U.S.C. § 1983. It contends that, because the Supreme Court has recognized common law immunities under 42 U.S.C. § 1983, some such immunity must necessarily exist under the FDCPA. This argument fails as well. The cases cited by W&A involve the preservation of state common law immunities for public officials under § 1983. W&A identifies no state common law litigation immunity that would protect the actions of a private attorney in this case.

A bigger flaw in W&A's argument is its faulty premise: in analogizing to § 1983, W&A overlooks the FDCPA's statutory framework. The FDCPA in form and structure is a far cry from a Reconstruction-era civil rights statute. It is instead a "comprehensive and reticulated" statutory scheme, involving clear definitions, precise requirements, and particularized remedies. *Cf. Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 361 (1980) (describing ERISA). The stat-

ute contains more words in its first section, the "Congressional findings and declaration of purpose," than the entirety of § 1983. It is clear that Congress meant not to incorporate common law immunities in this area, such as they may be, but to overwrite them, defining the scope of liability and immunity entirely by statute. Where the intent of Congress is so clearly expressed in the text of one statute (the FDCPA), it may not be turned aside by comparison to an entirely different statute (Section 1983). *See, e.g.*, *Nix v. O'Malley*, 160 F.3d 343, 352-53 (6th Cir. 1998) (no common law "attorney immunity" under federal wiretap statute); *Steffes v. Stepan Co.*, 144 F.3d 1070, 1074-75 (7th Cir. 1998) (no common law litigation immunity under Title VII and ADA); *Blevins v. Hudson & Keyse, Inc.*, 395 F. Supp. 2d 662, 667-68 (S.D. Ohio 2004) (no common law litigation immunity under FDCPA); *Irwin v. Mascott*, 112 F. Supp. 2d 937, 963 (N.D. Cal. 2000) (same).

Ultimately, W&A's specific arguments are manifestations of the same general claim: that it simply cannot be the case that the FDCPA covers litigation, the entire purpose of which is to arrive at the truth through the clash of the adversarial process. This argument may have some intuitive appeal, but the fact that an interpretation may seem appealing does not mean that it is correct. While the district court stated, "I cannot see how commercial litigation could proceed" if the statements at issue in this case were subject to the FDCPA, the FDCPA does not apply to commercial litigation: it covers debt collection where "debt" is defined as an obligation of a "consumer," defined as a "natural person," for "personal, family, or household purposes." 15 U.S.C. § 1692a(3), (5). And, in any event, "[i]n the ordinary case, absent any indication that doing so would frustrate Congress's clear intention or yield patent absurdity, our obligation is to apply the statute as Congress wrote it." *Hubbard v. United States*, 514 U.S. 695, 703 (1995) (internal quotation marks omitted). Operating from "the understanding that Congress says in a statute what it means and means in a statute what it says there," *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000), we reverse the district court's dismissal of the action.

### III.

For the sake of clarity on remand, we must address some final arguments advanced by W&A.

W&A argues that, even if no absolute litigation immunity applies, Sayyed's claims arising from W&A's summary judgment motion must still be dismissed due to "witness immunity." W&A argues that Sayyed's allegations fail to state a claim, because they take issue with statements made by witnesses in affidavits attached to the summary judgment motion. In support of this proposition, W&A invokes a line of cases discussing the scope of immunity for witnesses under the common law. *See, e.g.*, *Malley v. Briggs*, 475 U.S. 335, 340 (1986) (finding no common law immunity for a "complaining witness"); *Briscoe v. LaHue*, 460 U.S. 325, 330-31 (1983)(finding common law immunity for trial witnesses against defamation suits).

We need not explore the scope of witness immunity because, contrary to W&A's contention, Sayyed's suit does not raise this issue. W&A claims that "Sayyed's suit asserts W&A is liable for purported false statements contained in affidavits signed by Discover and W&A." This is not the case. Sayyed's complaint alleges that the summary judgment motion itself contained false statements. Sayyed claims that the summary judgment motion (1) falsely represented the amount of Sayyed's debt, in violation of § 1692e(2)(A); (2) sought attorney's fees not expressly authorized by the credit card agreement or permitted by law, in violation of § 1692f(1); and (3) in seeking unauthorized attorney's fees, falsely represented the compensation which the debt collector could lawfully receive, in violation of § 1692e(2)(B).

The summary judgment motion contained these statements. The affidavits attached to the motion repeated these statements: the affidavit of a Discover Bank account manager stated the amount of Sayyed's debt and asserted that Sayyed was liable for attorney's fees "as allowed by the credit card agreement," while the affidavit of W&A attorney Ronald S. Canter asserted that W&A's agreement with Discover Bank allowed it to seek fees of fifteen percent. J.A. at 30. But Sayyed is not seeking to hold W&A liable for the affidavits; his cause of action is based upon the summary judgment motion itself. *Compare Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d 432, 444 (6th Cir. 2006) (law firm as complaining witness enjoyed no witness immunity from FDCPA for affidavit commencing garnishment proceeding). For reasons we have discussed at length, the motion is subject to the provisions of FDCPA under which Sayyed seeks relief.

We express no opinion on whether witness immunity would apply to affidavits executed by a debt collector, because that issue is not raised by this case.

In the alternative, W&A argues that it should not be held liable for the statements in the summary judgment motion, because it reasonably relied upon the affidavit of its client for those statements. The district court agreed with W&A and noted this circumstance as an alternative ground for dismissing Sayyed's claims relating to the summary judgment motion. The court stated, "[T]he fact that the lawyer . . . relies on the client's representation and then makes the statement in my view would be another reason why the lawyer could not be individually liable under the act." J.A. at 82-83.

In this, the district court was in error. The district court treated W&A's alleged reliance as another reason to dismiss for failure to state a claim, but its proper role is as a defense against legally cognizable claims under the FDCPA. It is uncontestable that the FDCPA creates a cause of action against attorneys who act as debt collectors for their false statements about the debt. The Act also provides the *exclusive* method of considering whether the attorney's false statements were the product of reasonable reliance upon another party: the bona fide error defense of § 1692k(c). Thus, for example, in *Heintz v. Jenkins*, the circuit court reversed the district court's dismissal for failure to state a claim. *See Jenkins v. Heintz*, 25 F.3d 536, 540 (7th Cir. 1994), *aff'd*, 514 U.S. 291 (1995). On remand, the district court applied the bona fide error defense of § 1692k(c) and granted summary judgment to attorney Heintz, and the Seventh Circuit affirmed. *See Jenkins v. Heintz*, 1996 WL 535167 (N.D. Ill. 1996), *aff'd*, 124 F.3d 824 (7th Cir. 1997).

On remand, W&A may of course (1) contend that there were no statutory violations, or (2) avail itself of the § 1692k(c) defense by showing by a preponderance of the evidence that any violations were not intentional and "resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). W&A's reliance on its client may well be relevant to that inquiry. But the district court erred in dismissing Sayyed's claims outright on the basis of this concern. The statutory

framework establishes that the proper place for the inquiry is not at the Rule 12(b)(6) stage.[2]

IV.

The FDCPA aims "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Adopting the sweeping immunities urged by appellee would stop the statute in its tracks. We must therefore reverse the district court and remand so that the case may be decided in accordance with the statutory framework that Congress has set forth.

*REVERSED AND REMANDED*

---

[2]In a similar vein, the district court erred in dismissing two of Sayyed's claims on grounds that were not briefed by the litigants or fully addressed by the court. First, the district court dismissed Sayyed's claim under § 1692e(11) that the interrogatories failed to disclose that they were from a debt collector, on the ground that the interrogatories fell into § 1692e(11)'s exemption for a "formal pleading made in connection with a legal action." Second, the district court dismissed Sayyed's claim under § 1692f(1) on the ground that attorney's fees of fifteen percent were per se reasonable. At the Rule 12(b)(6) stage, these issues had not been fully briefed by the parties; indeed, W&A, in asserting both grounds in its motion to dismiss, cited no legal authority for either. Moreover, the district court's rulings on these issues were secondary to its holding that all of the defendant's activity was protected by common law immunity. *See* J.A. at 83 ("But in any event, it's still all protected by the absolute[ ] immunity that exists in connection with these papers filed in this case."). Now that it is clear that no such immunity exists, the application of specific FDCPA provisions may be thoroughly addressed below with the aid of briefing by the parties. For these reasons, we express no opinion upon these issues and remand for further consideration.