## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KRISHNA MUIR,

Plaintiff,

v.                                              Civil Case No. 03-1193 (RJL)

NAVY FEDERAL CREDIT UNION, *et al.*,

Defendants.

## MEMORANDUM OPINION
(September 29, 2010) [#88]

Plaintiff Krishna Muir brought this action against Patricia L. Dearing, L.L.C., ("Dearing") on June 3, 2003. Plaintiff claimed that Dearing violated the Fair Debt Collection Practices Act ("FDCPA") by participating in the tortious conversion of plaintiff's funds, which had been deposited in plaintiff's account at Navy Federal Credit Union ("NFCU"). Specifically, plaintiff claims that Dearing worked jointly and in concert with NFCU to set off and convert a joint bank account held by plaintiff and his father in the amount of $27,022.90 to satisfy a debt that had been incurred by his father, individually. After prolonged litigation, during which all claims against Dearing, except for plaintiff's claims under the FDCPA, were disposed of, this case is now before this Court on Dearing's Motion for Summary Judgment. For the reasons set forth below, the Court GRANTS Dearing's motion.[1]

---

[1] Plaintiff brings suit against both Dearing and NFCU. NFCU has filed a separate Motion for Summary Judgment [#87], which the Court has addressed in a separate Memorandum Opinion.

1

## BACKGROUND

The facts of this case have been recounted through various rulings both by this Court and our Circuit Court and do not require a lengthy reiteration here. In short, on October 1, 2002, plaintiff deposited $29,015.55 in a joint account that he held with his father at NFCU. Compl. ¶ 9. On October 17, 2002, NFCU set off the account in the amount of $27,022.90 to satisfy a debt that been incurred by his father, individually. Dearing's Stmt. of Facts, Sept. 24, 2009 ("Dearing Stmt.") ¶ 2. Because of the reasons set forth in my March 1, 2005 memorandum opinion and order, I entered judgment against NFCU and awarded plaintiff actual damages in the amount of $27,022.90. Mem. Op. and Order of Mar. 1, 2005 at 3 (vacated Jan. 4, 2007 and reinstated Mar. 19, 2007). I also dismissed all claims against Dearing for lack of standing. Mem. Op. and Order of Feb. 28, 2005. In 2008, our Circuit Court, however, held that plaintiff did have standing under the FDCPA to bring the suit against Dearing and remanded the case for further proceedings. *Muir v. Navy Fed. Credit Union*, 529 F.3d 1100 (D.C. Cir. 2008). Interestingly, plaintiff did not appeal and the Circuit Court did not address, my dismissal of plaintiff's tort claims arising under state law. *See id.*

## ANALYSIS

Summary judgment is appropriate when the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

255 (1986). However, in opposing a motion for summary judgment, the non-moving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248 (citing Fed. R. Civ. P. 56(e)). Moreover, "[t]he mere existence of a scintilla of evidence in support of the [non-movant]'s position will be insufficient." *Id.* at 255. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

Plaintiff brings this action against Dearing under various sections of the FDCPA, including § 1692d (prohibiting "conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt"), § 1692f (prohibiting "unfair or unconscionable means to collect or attempt to collect any debt"), § 1692e (prohibiting "false, deceptive, or misleading representation or means in connection with the collection of any debt"), and § 1692g (setting requirements relating to the validation of debts and other initial communications). 15 U.S.C. §§ 1692d-g (2006). Specifically, plaintiff claims that Dearing worked in concert with NFCU – and even directed NFCU – in the wrongful conversion of plaintiff's funds in violation of these provisions. Compl. ¶¶ 60-105. In support of this claim, plaintiff lists nine "separate and distinct" pieces of evidence. Pl. Opp'n at 9. Unfortunately, for plaintiff, this evidence is not sufficient to defeat summary judgment.

Plaintiff's first two pieces of evidence, supported only by his own deposition, relate to alleged statements made by Dearing and NFCU to the effect that Dearing authorized the set off of plaintiff's funds. *Id.* Notably, however, the first piece of

3

evidence, that Dearing admitted authorizing the set off, was not even heard by the plaintiff. Muir Dep. 44:3–6. Instead, plaintiff claims Dearing told his father. *Id.* Irrespective, these statements are not only unsupported by any other evidence on the record, but contradicted by both Dearing and NFCU's testimony and by other circumstantial evidence. Indeed, plaintiff lists seven other pieces of evidence that are largely irrelevant to his claims and, if anything, contradict his first two points. *See* Pl. Opp'n at 9. For example, plaintiff points to evidence that at or around this time Dearing was charged with collecting on his father debt, pointing to a letter sent by Dearing to plaintiff's father on the day plaintiff's funds were set off. *Id.* However, the letter merely asks plaintiff's father to validate the entire amount of the debt – $43,973.69 – and requests a certified check in the "full amount owed" to be mailed to Dearing's office. Dearing Mot. Summ. J. Ex. 3. Far from indicating that Dearing had authorized the set off of $27,022.90, the letter confirms that Dearing did not know of NFCU's actions. Further, consistent with Dearing's own statements and description of how collections are conducted, NFCU has stated that Dearing had no involvement in the set off. *Compare* Patricia Dearing Dep. 53:21–54: 8 (explaining that Dearing never "instruct[s] anyone to withhold funds in a particular account") *with* NFCU's Rep. to Pl. Interrog. No. 22 (stating that Dearing had no role in the set off).[2]

---

[2] Plaintiff also claims that because Dearing and NFCU refused to disclose the content of any communications between Dearing, a law firm retained by NFCU, and NFCU, Dearing could not now claim that plaintiff has no evidence regarding Dearing's participation in the set off. Pl. Opp'n at 12-13. However, the communications about which plaintiff sought disclosure were privileged. Further, Patricia Dearing explained, under oath, during her deposition that her firm did not participate in or authorize the set

4

Plaintiff also brings claims against Dearing for deceptive and misleading representations. Compl. ¶¶ 106-113. However, plaintiff has provided no evidence that Dearing ever communicated with plaintiff, either directly or indirectly. See 15 U.S.C. § 1692(a)(2) (defining "communications" under the FDCPA as "conveying of information regarding a debt directly or indirectly to any person through any medium"). Indeed all communications in this case were direct *to plaintiff's father* or indirect *to plaintiff's father* through plaintiff's father's attorney. Muir Dep. 44:3–6; Dearing Mot. Summ. J., Exs. 4-5. Thus, even under the broad definition of communication set forth in the FDCPA, none of the communications at issue in this case were *to* plaintiff. *See Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 232 (4th Cir. 2007).

Notwithstanding these communications, plaintiff cannot collect damages against Dearing. On March 19, 2007, this Court entered judgment against NFCU and awarded plaintiff actual damages of $27,022.90, reinstating its decision from March 1, 2005. Mem. Op. and Order of Mar. 19, 2007 at 2. Plaintiff is, therefore, essentially claiming lost profits against Dearing because plaintiff did not have access to his funds and could not, as a result, enter into a series of investments that would have yielded him $110,750. Pl. Opp'n at 17-22. Please!

Lost profits may only be awarded if the fact of the injury is *proven* with "reasonable certainty" and the amount of damages is based on a "reasonable estimate." *Samaritan Inns v. District of Columbia*, 114 F.3d 1227, 1235 (D.C. Cir. 1997). Here,

---

off of plaintiff's funds. *See* Dearing Dep. 53:21–54: 8. Thus the information that plaintiff claims was withheld was, in fact, provided to plaintiff.

5

plaintiff can show neither. The reasons are the same as laid out in my disposition of plaintiff's case against NFCU, which has been decided concurrently with this one. Mem. Op. and Order of Sept. 29, 2010 [#98]. In short, plaintiff's alleged lost profits are *speculative* at best. Neither the certainty of the loss nor the estimate of the profits are sufficiently reasonable to warrant an award of lost profits. Plaintiff's claim, as a result, is to no avail.

## CONCLUSION

Accordingly, for the foregoing reasons, the Court GRANTS defendant Dearing's Motion for Summary Judgment [#88]. An order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge